May it please the court. My name is John Knepper and I represent the North Carolina State Health Plan for teachers and state employees. The decision whether to demand a waiver of a state's sovereign immunity as a condition of federal funds is for Congress alone. Congress must demand the waiver and it must do so clearly in the text of the relevant statute. The private plaintiffs in this case, the FLEs, have brought suit against the state of North Carolina under the Affordable Care Act. Because that statute does not refer to suits or relief against states or the sovereign immunity at all, Congress has not demanded a waiver of sovereign immunity unequivocally as a condition of receipt of those federal funds. As the U.S. Supreme Court noted in Sosamon v. Texas, clear statement rules are not simply interpretive guidelines. The requirement of a clear statement in the text of the statute ensures that Congress has specifically considered state sovereign immunity and is intentionally legislated on. This clear statement will avoid circumstances where, such as the one presented here, where Congress might legislate on a sensitive topic inadvertently or without due deliberation through broader general language. Without such a clear statement from Congress and notice to the states, federal courts may not step in and abrogate state sovereign immunity. The question for this court is whether Congress did consider the state's sovereign immunity and demand a waiver as a condition of funding within the Affordable Care Act, including for enforcement of Section 1557. The question is not whether Congress would have wanted a demand to demand a waiver of sovereign. There can be no waiver of state sovereign immunity unequivocally expressed in the text of the relevant statute when the statute that provides the funding and the cause of action does not mention suits against states or sovereign immunity at all. As noted in the reply brief, the stringent standard one court's referred to as must be as clear as is the summer's sun and where you have the judicial branch coming in and concluding that oh this is sufficiently similar or we think this is what Congress would have meant. While that's an acceptable means of statutory interpretation in most contexts, in the context of sovereign immunity due to the intrinsic federalism value that sovereign immunity preserves, that's too much. And so the state's position is that there can be no waiver of sovereign immunity for enforcement of Section 1557 against the state of North Carolina like other 49 states. That doesn't mean that Section 1557 is a dead letter at all. There are thousands of potential defendants for which a private suit would be authorized. It simply is that that there is no waiver of sovereign immunity to allow the federal courts to hear a claim brought by private plaintiffs against the state of North Carolina. And your position is that's because the waiver of text of the relevant statute and our position is that the relevant statute is the one that provides the funding and that provides the cause of action and neither of those are and that is Section 1557. The plaintiffs have brought other claims. I just want to make sure. You're saying because it's not contained only in 1557, that's the reason why there's no sovereign immunity? Well, yes, Your Honor, because there is no reference whatsoever to state sovereign immunity or suits against states in Section 1557 or anywhere else in the Affordable Care Act. Or anywhere else where you trailed off? In the Affordable Care Act itself, Your Honor. In other words, there's no reference to sovereign immunity anywhere within the 2010 Affordable Care Act, that thousand page statute. Yeah, but it references... Counsel, I think the district court agreed with you there and rested its opinion on this residual clause from a 1986 statute. So, you should probably move to address that at some point because that's the basis as I understand the record of the district court's ruling. Sure. Your Honor, the district court's error was in substituting its judgment for that of Congress. In other words, the question is not whether... The question is whether Congress thought that this statute, Section 1557 of the Affordable Care Act, was one of the statutes covered by the residual clause from 1986. It's not whether we might conclude after the fact that this is what Congress would have meant. And so, the notion that a court would have to say, well, this is sufficiently similar, which was the language that the district court used, that is not sufficient within the context of state sovereign immunity, to my degree. Because it would be a different case if, as this court decided in Lipman, there's a specific reference to Title IX in both the Affordable Care Act, both Title IX and the waiver provision residual clause. Or if Section 1557 specifically reached out and referenced the residual clause. Mr. Knepper, can I ask a follow-up to Judge Agee's question about the residual clause? So, as I understand it, part of the district court's analysis with respect to sufficiently similar is a nod to those cases where plaintiffs were attempting to fit a square peg in a round hole by trying to analogize the statutes like Arlupa and others that simply just didn't fit within the rubric of statutes that were intended to fight discrimination. But the ACCA has an explicit provision in it. And the residual clause basically says that it applies that sovereign immunity will be waived for any other federal statute prohibiting discrimination by recipients of federal financial assistance. I don't know, short of doing what you seem to suggest, that is including the language directly in the statute, I don't know how much more clearer Congress could have been in terms of what it intended. Because otherwise, what work is that residual clause doing? Well, first of all, I think that the clear statement rule, and specifically the Supreme Court's requirement that it has to be in the text of the relevant statute, in other words, that's not a gloss that I'm adding. That's Sosimon's explicit requirement, and it had the residual clause in front of it. I think, you know, let's acknowledge two things. One, the residual clause was enacted at a time when the clear statement rule wasn't as clear as it's become since then. Second, I think, you know, we're not asking this court to say that the residual clause can never apply. What we're saying is when Congress makes no reference whatsoever to the residual clause, the residual clause itself can't spring forward because it amends a statute that is referred to in the Affordable Care Act. And where would you say that Congress would make reference to the residual clause in the relevant statute itself? Is that what you're saying? That's what the Supreme Court has said. So why would it bother to do that? I mean, it would just simply be easier just to make an express statement in the statute. Exactly, in the Affordable Care Act, in section 1557. Well, that's one way to do it, but the other way to do it is this way. So I guess the question is, what is the residual clause? What work is it doing? I think at one point you may have made the argument that it only applies to statutes then existing at the time of the enactment. Do you still think that's correct? Well, you know, when you look at the legislative history, which is admittedly sparse, it does seem, and that is what the legislature was talking about. In other words, it doesn't have to be, they said there might be other statutes. This was passed shortly after. Are you aware of any other statutes? Well, I can identify some other statutes for which the courts have not found a waiver, and the most obvious cited in the reply brief is the Fair Housing Act. I'm not aware of any case that has said that's a statute that includes an anti-discrimination provision and it applies to projects that receive federal funding. I've not seen a successful case that argues that this waiver carries forward and captures that. In part because the critical question for a waiver of sovereign immunity is clarity both from the Congress, what it intends, and clarity for the state as to when, as to giving up its sovereign immunity. I mean, what we have here is Congress passes sort of a freestanding provision, the residual clause, that doesn't, you know, as opposed to the four specifically named statutes where this court and others have said that's clear, right? Once you've named the statutes in the residual clause, even if it's afterward, you know, the state's unnoticed. But sort of this vague language of any other statute. Then you move forward to some point in the future, in this case, in the early 2000s, with the retiree drug subsidy, completely, you know, a federal funding mechanism that the state health plan receives through the expansion of Medicare. And then in 2010, you suddenly when the, you know, the command, oh, by the way, you've waived your sovereign immunity by accepting this money in 2005 because of this provision in 1986. And the position is Congress can't do that. Congress has to specifically look at the funding and the waiver and say to the state, this is your, this is the deal. And if it doesn't do that, it hasn't, it hasn't met the stringent standard so to speak. I also want to just tie on, because there's a specific statutory language in here that I think is important to just focus on, which is, you know, Section 1557 talks about, it will be, it refers to the enforcement mechanisms provided for and available under these other statutes shall be provided, shall apply for purposes of the violation. And the Supreme Court has specifically talked about the enforcement mechanisms for Title IX and specifically says that those are an administrative procedure run by the Department of HHS for private lawsuits, the implied cause of action. At no time does the Supreme Court in 2009, this is the Fitzgerald case, refer to a waiver of sovereign immunity as an enforcement mechanism. That term is not fairly included within the language that Congress used in 2010. I think, you know, I think that the critical point here, Your Honor, is that inferences are not enough and that sovereign immunity is different. That, you know, Congress, if Congress wants to condition this, it can do so, but it must be explicit and it must give the state an opportunity to see the bargain that's being made. And what, you know, without that, without that, I mean, you get, you get circumstances like the question of 1980, in 1986 for these residual statutes that would be swept up. You know, could the court analyze those? Could the court analyze that as a constitutional spending clause condition? Or is court to, when there's no ability to know what's being demanded of the state, what's the funding stream, what's the existing funding stream? Those are all analyses that would go into a challenge like this. Mr. Deppard, can I, sorry, just another question. So is this an issue of notice, lack of notice? Is that the problem here? Or is it because obviously at some point the state receives notice and yet continues to insist that its receipt of federal funds shouldn't be conditioned on the, on a waiver of sovereign immunity. So is it just simply because it's not direct enough that no amount of notice is sufficient to put the state to the burden of litigating in federal court? Well, actually that gets to, gets to sort of a part of the wrinkle that's here, Your Honor. It is, there is a notice requirement under sovereign immunity. In other words, that's part of the test that has to be sufficiently clear to the state of what bargain is being made. It also, there's the clear statement rule. Congress has to be sufficiently clear in the text of the relevant statute that this is what it's demanding. But, but beyond that, one of the wrinkles that we have here is it's unclear and has been unclear sort of how this applies to states. I mean, Congress passed 1557 in 2010. In 2016, the Department of Health and Human Services said insurance is part of a health program or activity. At that point, two things happened. One, a group of states challenged, not including the state of North Carolina, challenged the, challenged that 2016 regulation and received a national injunction. At the same time, the state of North Carolina says, okay, well, 1557 applies to us. We're going to, we're going to make a change for a year and provide, and comply with this particular, and there are lots of provisions in 1557, but the specific one here relates to coverage of certain health benefits for individuals who are transgender. Not, not other health benefits. In other words, the state's not suggesting that people who are transgender are not entitled to healthcare insurance because they're transgender. That's not, this is about specific benefits for specific treatment. Uh, at this point, the state adopts it for the one plan year. And then when it comes back by that time, it's going to join this particular application. And then in 2020, the Department of HHS comes back and says, that rule no longer applies at all to health insurance programs. And so, and, and now that, that group being challenged, I don't want to make it sound like, you know, that's, but I think it gets to the issue that the state has, which is the clarity that this is the kind of, you know, that you should have known that the retiree drugs, drug subsidy money meant private suits by litigants. It's a health plan or a coverage decision is, is, you know, is, is, you know, there's not really, the failure to be able to find a time when you can actually do that highlights the lack of clarity for the state. And clarity and stringent tests is what's required by the U.S. Thank you. Thank you. Thank you, Your Honor, and good afternoon. May it please the court, Omer Gonzalez-Pagan, and I will be arguing on behalf of the plaintiff's affiliates today. The question before the court is a relatively straightforward one. Did the North Carolina state health plan as a state entity waive its sovereign immunity as it pertains to liability under section 1557 of the Affordable Care Act by accepting federal funds from the Department of Health and Human Services? The answer is yes. When Congress enacted the Civil Rights Remedies Equalization Act in 1986, it struck a, Congress struck a bargain with the states. If a federal statute prohibits discrimination by recipients of federal financial assistance. Counsel, are you arguing solely on the basis of the residual clause in the 1986 statute, meaning you're not arguing that 1557 on its own acts as a sovereign immunity waiver? No, Your Honor. We are arguing that actually the Civil Rights Remedies Equalization Act has waived sovereign immunity here in two ways. First, section 1557 falls squarely within the statutory language of the residual clause of CREA. But alternatively, it incorporates both the grounds and the enforcement mechanisms of Title IX. And the waiver of sovereign immunity and liability to suit by private citizens under Title IX is one of those enforcement mechanisms that is incorporated into section 1557 itself, explicitly. Well, as far as the residual clause is concerned, it's been around now for, I guess, 35 years. Has any court of appeals ever found that to act as a waiver of sovereign immunity? No, Your Honor. And that is because there has never been another spending clause legislation that was covered by that residual clause, which was intended to obviously apply into the future. There are only five statutes, at least to my knowledge, that prohibit discrimination by a recipient of federal financial assistance. Those are the statutes enumerated in the Civil Rights Remedies Equalization Act and incorporated into the ACA section 1557. So does the spending clause take that type of case out of the Supreme Court's clear unending admonition that a waiver of sovereign immunity has to be clear, can't be implied, can't be inferred, has to be self-evident? Is this a special subcategory of sovereign immunity? No, Your Honor. We believe that the admonition from the Supreme Court and the caution that it has given is that the waiver of sovereign immunity be clear and unequivocal in their relevant statute, and that in statutory language. And this court, both in Littman and Constantine, as well as the Supreme Court in Franklin and Peña, Lane v. Peña, have recognized that the statutes enumerated in the Civil Rights Remedies Equalization Act, they don't contain a specific provision within that statute, but that the relevant statute for purposes of evaluating the waiver is the Civil Rights Remedies Equalization Act. And in fact, in Littman, this court read Title IX in conjunction with the Civil Rights Remedies Equalization Act. In Constantine, it did the same with regards to Section 504 of the Rehabilitation Act. And that is exactly what those sections, those sections are specifically enumerated before the residual clause. So for instance, the Second Circuit, I think the name of the case is Cronin, looked at this and said, well, the residual clause can't act as a waiver of sovereign immunity. Why else would the Congress have listed these other statutes specifically? Well, there weren't any other statutes to my knowledge that fell under the purview of the residual clause, but this is the statute that falls within the four corners of that. The residual clause prohibits, specifically leads to the conclusion that the provision of any federal statute prohibiting discrimination by recipients of federal financial assistance. That is exactly what Section 1557 of the Affordable Care Act does and is. It is the only, to my knowledge, federal legislation that falls within that residual clause. But what's your best case? Because I'm not aware of any where sovereign immunity is approved without a specific statutory reference in the statute that does the waiving that denominates that statute by name. What's your best case for the contrary proposition? I do not have a case for the proposition that it be named by name, nor I believe there is a case to the contrary either. I believe that it's an open question that has been left open by both the Supreme Court in Tossamon and this court in Litman in Madison. And ultimately, the reality is that the statutory language there is quite clear, clear as day. Any statute that prohibits discrimination by a recipient of federal financial assistance, that is exactly what Section 1557 is. That waiver occurs when you read both that statute in conjunction with Section 1557, which is what this court has done with Title IX and CREA and the Rehab Act and CREA. I additionally would posit to the court that there is the argument about whether this is an enforcement mechanism that is both provided for and available under Title IX and likewise incorporated into the Section 1557 of the Affordable Care Act. We would argue that it is both provided for and available under. In fact, the private right of action under Title IX is not even delineated in the statutory language of Title IX. It was recognized by the Supreme Court as an implied right of action and thereafter  and that the Supreme Court has stated in United States v. Georgia that that Congress's enforcement power includes the power to abrogate state sovereign immunity by authorizing private suits for damages against the state. And this court has also referred to enlistment as the waiver of sovereign immunity as a mechanism to enforce the statute. And so we believe that it is an enforcement mechanism that has been incorporated through the enforcement mechanisms of Title IX into Section 1557. And I don't believe that the plan has argued that Title IX does not imply sovereign immunity and that it is not subject, the state would not be subject to Title IX. I would also posit before the court that the conduct of the plan in this case is indicative of the reasonable state expectations when the Affordable Care Act was passed and as to the bargain that it had struck. As soon as the Affordable Care Act was passed and in evaluating the Section 1557 provision, it started evaluating whether it needed to eliminate the exclusion. It actually did for the year of 2017, specifically stating that not doing so, they would have faced discrimination losses for non-compliance. That's a quote from one of the state officials and it is in the complaint in paragraph 50, Joint Appendix pages 31 and 32. And in addition, they continue to represent to the public themselves through their Section 1557 procedures that are posted on their website, that they are indeed subject to Section 1557 and may be subject to suiting court for violations of that statute. We believe that that is indicative, not because it's a subjective test, but it's indicative of the reasonable state official that would read this. And any state official who reads Section 1557 in conjunction with the Civil Rights Remedies Equalization Act would come to the same conclusion as this court that held in Letman. Finally, Your Honors, unless there are any other questions, I would just address the point about the question of whether the health plan is a program or activity. First of all, we would argue that that is not a question before this court. Before this court, it's a threshold question of whether they have waived sovereign immunity of this based on a collateral order appeal. And in any event, that goes to the merits. But even if we were to address that, the statutory language in Section 1557 is unambiguous. And the 2020 rule is not subject to deference in that instance. It applies to any health program or activity. It defies common sense for them to argue that a health insurance program, a plan, is not a program or activity related to health. In any event, those are being challenged as counsel acknowledge in court. And that challenge includes the state of North Carolina, who is a plaintiff suing the Department of Health and Human Services, arguing contrary to the position that counsel has put forward today. And that is in the lawsuit, New York v. the Department of Health and Human Services in SDNY. And it is referenced in our brief on page 28. Mr. Durack, Gonzalez-Pagan, I wanted to follow up with you on this issue of waiver, and in particular, the Tenth Circuit's decision in Levy v. Kansas Department of Social and Rehabilitation Services. So part of that hold in the court there said that to be a knowing and voluntary waiver, it can't be hidden in another statute and only apply through implication. Obviously, you disagree with that. But separate from that, I think what Levy pointed out was that it's also relevant to decide or consider whether or not the statute in question is laser-like focused on discrimination, or whether it has a broader focus other than discrimination. I suppose the argument here is that the ACCA has as part of its component, obviously, an element of eliminating discrimination, but it's much broader than that. It deals with health care issues and the like. So why isn't that analysis applicable here? We don't have a statute that deals exclusively or primarily with discrimination. It's much broader. And we have this issue of finding a waiver by implication. Why doesn't the combination of those two things warrant a different result, but the same result here? I have two responses to that. I will address first the issue of implication. This is not an issue where there is a waiver by implication. There is an explicit waiver that has been demanded by Congress in the Civil Rights Remedies Equalization Act. Well, but that was also the case in Levy, right? There was... No, Your Honor. And the distinction is as follows. Levy involved the American with Disabilities Act. And there's another case that was referenced by counsel in their brief involving the Fair Housing Act that they alluded to during oral argument. Neither of those two cases are applicable because neither of the statutes fell within the four corners of the Civil Rights Remedies Equalization Act. While those statutes prohibited discrimination, they did not prohibit discrimination pursuant to a spending clause to a recipient of federal financial assistance. Rather, both of those statutes, the American with Disabilities Act and the Fair Housing Act were statutes enacted pursuant to Section 5 of the 14th Amendment. And in those circumstances, the Supreme Court has demanded, has found that there is a possibility for direct abrogation by Congress to the extent that it's concomitant with the Equal Protection Clause but that it must be explicit in those statutes. Those statutes did not fall under CREA because they were not statutes that were prohibiting discrimination by a recipient of federal financial assistance. That's the first answer as to the question of implication, Your Honor. And pardon me, Your Honor, I just blanked on your second question, if you don't mind. Well, the second part of it was the fact that the ACCA, just like the statute that issued in Levy, was much broader than about, it dealt with topics much broader than discrimination. Correct, Your Honor. And that is true of also some of the statutes that are addressing the Civil Rights Remedies Equalization Act. The Rehabilitation Act dealt with much more than just elimination of discrimination based on disability. It actually authorized a number of other programs and that is in fact why we keep referring to Section 504 of the Rehabilitation Act rather than the Rehabilitation Act as a whole. And in fact, that is also true of the Title IX amendments to the Education Amendments of 1972. Not all of the provisions dealt with discrimination and some of them authorized independent programs. That ultimately here, the Affordable Care Act is a statute that is aimed at ensuring access to healthcare and improving that access. Part of that is the elimination of discrimination in healthcare and the Section 57 is part and parcel and indeed essentially in part to that very purpose. However, I would posit that there is no requirement that I have seen that simply referring to a statute means referring to an entire public law as opposed to a specific statutory provision within an entire public law. We know that in the modern age of legislation acted by Congress, those bills tend to be multifaceted and incorporate multiple bills into one when it comes to passage. And to demand that, I'm not aware of any authority that demands that the bill deals solely with the issue of discrimination in order for it to be covered by the Civil Rights Remedies Equalization Act. 1557 takes you directly to Title IX, Title VI, the reference, not implicitly, but explicitly, correct? That is correct. It explicitly incorporates the grounds and enforcement mechanisms of each of those four statutes that would be one of the alternative argument in which we believe that Section 57 has an explicit waiver by incorporating those mechanisms. But in any event, we would also argue that it can be read in conjunction with the residual flaws of the Civil Rights Remedies Equalization Act. Your honors, if there are no more questions, at the end of the day, the inquiry before the court is whether the state health plan is able to ascertain what is expected of it in return for federal funding from the Department of Health and Human Services. From a factual perspective, any reasonable state official or state agency, as the state health plan did here, would have known what was expected of it in return for federal funds. From a legal perspective, any state reading Section 57 in conjunction with the Civil Rights Remedies Equalization Act, or just knowing the enforcement mechanisms incorporated for Title IX, knows what is expected of it and in return for federal funds. We urge the court to affirm. Thank you, Mr. Gonzales. May I? Thank you very much, Chief Judge. I think I want to, I'm going to try to address two or three of the issues that came up. The first is the question about sort of interpreting the residual clause. Your Honor, this is the same kind of separation of powers issue that's presented in other residual clause cases. So, for example, in under the Immigration and Nationality Act, the Supreme Court has said a crime of violence is not something that Congress can delegate that interpretation to the judiciary, that it is up to Congress to make that decision. Even if you could say this might be a crime, even if there could be agreement that this particular action would qualify as a crime of violence, the Supreme Court said that was too much under Sessions v. Pereira. That was Justice Kagan in 2019. And our argument here is the same, that the courts have, that Congress is the one that has to do it, not simply by a broad reference that the courts then go out and attach to various funding streams based on other statutory commands. Second, to be clear, Section 57 is not a dead letter, even as to the state of North Carolina. There are still enforcement mechanisms available. There are grant restrictions that are possible. There's no question that they remain available. And the United States, there's no barrier to suit by the United States in any circumstance. So the question is a more limited one, which is did Congress intend that suits by private parties in federal court be available as a condition of this funding? So I don't want to leave the impression that the state of North Carolina's position is, or that if efforts to comply are irrelevant, but that doesn't answer the specific issue of federal jurisdiction here. Finally, I just note that in response to Judge Diaz's questions about sort of the broader statute, you know, that has been the approach in other areas. And to the extent that Congress thought a different thing should apply, they specifically identify, Section Title IX, Title VI. But the courts, both the Fifth Circuit and the Tenth Circuit and Levy have both said, if you're going to sort of draw it more broadly, that statute has to be one solely focused. And to be fair, that is the reasoning that the Supreme Court adopted in Sussman with regard to the RULIPA, which does have in Section II, language prohibiting discrimination in land use. But the court didn't say to it, therefore, the court said, well, but Section III has more. And then the court said all of RULIPA is, there's no waiver of sovereign immunity to man. And to the best of my knowledge, there's never been a court that has said, in fact, there's a district court in Maryland that has said the opposite. There's never been a court that said, well, that was only for Section III. There still could be application of the residual clause for Section II of RULIPA as to land use. That argument's never been made or adopted in the 10 years since Sussman. Well, that's because in that statute, it dealt with protection of discrimination in terms of services. In fact, it was giving more protection to the guy rather than more. So it was not that it was trying to discriminate, but it was giving more protection. So it wasn't the whole theory, if you will, the purpose of the statute was not related to preventing discrimination. Instead, it empowered them to do more things because of the religious practices. Your Honor, and the two things I'm pointing out are one, that the denominator that was looked at was RULIPA, not just Section III. In other words, the court's result was all of RULIPA, not just Section III of RULIPA, which dealt with prisoner litigation. And second, that which, so the denominator here should be all of the Affordable Care Act, not simply Section 1557. And then the other point is that in Section II of RULIPA, there is actually an anti-discrimination provision that says, in addition to the heightened standard, it also says that there shall be no discrimination. So you're right, it goes beyond, absolutely. But so does the Affordable Care Act, which goes far beyond simply being a federal statute. All right. Well, thank you, Your Honors. Thank you, Your Honor. That's all. Off the top. Thank you, Mr. Knepper. Thank you, Mr. Gonzales. I can't come down and greet you, but we appreciate so much your argument. And take care. Thank you so much. Thank you very much.
judges: Roger L. Gregory, G. Steven Agee, Albert Diaz